UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

MOHAMMAD RASEL,

          Petitioner,

   v.                                                  19-CV-1603
                                                      DECISION & ORDER
WILLIAM P. BARR, Attorney General, et
al.,

          Respondents.

─────────────────────────────────

On June 19, 2018, a border patrol agent found the petitioner, Mohammad Rasel,

in Texas not far from the international border between the United States and Mexico.

He had crossed the border the previous day, and he claimed that he was fleeing

political persecution in Bangladesh.

The Department of Homeland Security ("DHS"), Immigrations and Customs

Enforcement ("ICE"), has detained Rasel since then—more than twenty-two months.

He has petitioned this Court, for a second time, for a writ of habeas corpus, seeking his

release from detention.  Docket Item 1.

For the following reasons, Rasel's petition is granted in part.

## BACKGROUND

The following facts, taken from the record, come largely from filings with DHS.

Other facts, provided by Rasel, are undisputed.

Rasel is a thirty-one-year-old citizen and native of Bangladesh.  Docket Item 1 at

3; Docket Item 8-2 at 2.  DHS is not certain exactly where or when Rasel entered the

United States, but he did so from Mexico on or about June 18, 2018.  Docket Item 8-2 at

2.  The next day, a border patrol agent found Rasel in the Rio Grande Valley and placed

him in detention.  *Id.*; Docket Item 8-3 at 2-3.  Rasel was "processed for [e]xpedited

[r]emoval with [c]redible [f]ear."  Docket Item 8-3 at 3.  On August 7, 2018, an asylum

officer concluded that Rasel had established a credible fear of persecution in

Bangladesh because of his political opinion.  *Id.* at 9.

On August 15, 2018, DHS served Rasel with a notice to appear, charging that he

was removable as an immigrant who did not have a valid entry document at the time of

entry, *see* 8 U.S.C. § (a)(7)(A)(i)(I), and as a noncitizen present in the United States

without having been admitted or paroled, *see id.* § 1182(a)(6)(A)(i).  Docket Item 8-3 at

4.  The notice also informed Rasel that he was "an alien present in the United States

who ha[d] not been admitted or paroled"—that is, "an applicant for admission."  *Id.*  That

same day, DHS reached the conflicting determination that Rasel would be detained

"[p]ursuant to the authority contained in section 236 of the Immigration and Nationality

Act," 8 U.S.C. § 1226—which governs the detention of removable noncitizens already

present in the Untied States—"pending final administrative determination of [his] case."

Docket Item 8-3 at 11.  On August 29, 2018, DHS initiated removal proceedings against

Rasel.  Docket Item 8-2 at 3.

On October 2, 2018, Rasel, though counsel, appeared before an Immigration

Judge ("IJ").  *See* Docket Item 8-3 at 12-21.  He admitted the facts and allegations in

the notice to appear and conceded removal.  *Id.* at 15.  The IJ extended Rasel's time to

file an asylum application to November 1, 2018, and set a hearing for November 14,

2018.  *Id.*  at 17.

On October 23, 2018, an IJ denied Rasel's request under 8 C.F.R. § 236.1(c) for a change in custody.  *Id.* at 23.

Rasel did not meet the deadline to apply for relief from removal,[1] and, on November 13, 2018, the IJ granted DHS's motion to deem the application abandoned.[2] *Id.* at 33-34.  The IJ therefore ordered Rasel removed to Bangladesh.  *Id.* at 35.

On February 5, 2019, DHS denied Rasel's request that he be released on humanitarian parole.  *Id.* at 38.

Rasel appealed the IJ's removal decision to the Board of Immigration Appeals ("BIA"), which denied the appeal on April 30, 2019.  *Id.* at 39-40.  On May 16, 2019, Rasel filed a petition for review of the BIA's decision with the United States Court of Appeals for the Second Circuit.  *See Rasel v. Barr*, No. 19-1433 (2d Cir. May 16, 2019). On October 21, 2019, the Second Circuit granted Rasel's motion for a stay of removal. Motion Order, *Rasel v. Barr*, No. 19-1433, Docket Item 56 (2d Cir. July 8, 2019). Rasel's petition remains pending before the Second Circuit.

On June 10, 2019, DHS notified Rasel that it would review his custody status on July 19, 2019.  Docket Item 8-3 at 44.  More specifically, DHS advised Rasel that "[r]elease . . . is dependent on your demonstrating by 'clear and convincing evidence' that you **will not** pose a danger to the community and **will not** be a significant flight risk."  *Id.* (emphasis in original).  And "[y]ou must also demonstrate that a travel

---

[1] On November 8, 2018, the IJ granted the motion of Rasel's counsel to withdraw from representation.  *Id.* at 28.

[2] The IJ signed the order on November 13, 2018.  *See id.* at 8-3.  But he also held the scheduling hearing the following day and entered an oral decision explaining his rationale.  *See id.* at 36-37.

document is not available in the reasonable [sic] foreseeable future to effect your removal from the United States." *Id.*

On July 25, 2019, Darius Reeves, ICE Deputy Field Office Director, Batavia, NY, issued a "Decision to Continue Detention." *Id.* at 45-46. Reeves found that Rasel

> [has] limited education, familial support, and employment prospects. [Rasel] entered the United States without proper legal documents or a valid entry document and admitted to illegally crossing the international boundary without being inspected by an Immigration Officer. Given these factors, ICE considers that [Rasel] may pose a risk of flight.

*Id.* at 46. On November 14, 2019, DHS denied Rasel's second request that he be released on humanitarian parole. *Id.* at 59.

In the meantime, Rasel filed a petition for a writ of habeas corpus with this Court on April 8, 2019. *Rasel v. Barr* ("*Rasel I*"), No. 19-cv-458, Docket Item 1. This Court denied that petition on September 9, 2019. *See Rasel I*, Docket Item 13. As this Court explained, "even assuming that Rasel's detention [was] unreasonably prolonged, the government ha[d] not violated his procedural due process rights," *id.* at 7, because Rasel was entitled only to a "searching and periodic 'rigorous review of his eligibility for release' based on individualized findings." *Id.* at 12-13 (quoting *Clerveaux v. Searls*, 397 F. Supp. 3d 299, 321 (W.D.N.Y. 2019)). The October 2018 bond hearing, along with the July 2019 custody status review, met that standard. *Id.* at 13. But the Court cautioned that it "expect[ed]" that Rasel would continue to "'receive searching periodic' and 'rigorous review[s] of his eligibility' for release from detention to ensure that he remains free from prolonged arbitrary imprisonment," *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 399 (3d Cir. 1999), and that, "[i]f he does not, he [could] again seek relief." *Id.* at 15.

On November 25, 2019, Rasel filed a second petition for a writ of habeas corpus under 28 U.S.C. § 2241.  *See* Docket Item 1.  The respondents answered on January 31, 2020, *see* Docket Item 8; and on February 25, 2020, Rasel replied, *see* Docket Item 9.

## DISCUSSION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  Rasel argues that his detention is unreasonably prolonged and therefore violates his rights to due process under the Fifth Amendment to the United States Constitution.  *See* Docket Item 1 at 13-14.  He also argues that the "government's categorical denial of bail to certain non-citizens violates" the Excessive Bail Clause of the Eighth Amendment to the United States Constitution.  *Id.* at 14.

## I.  STATUTORY BASIS FOR RASEL'S DETENTION

The petitioner and the respondents disagree as to the statutory basis for Rasel's detention.  Although the respondents argued in their opposition to Rasel's first petition that Rasel's detention was valid under 8 U.S.C. § 1226(a),[3] which governs the detention

---

[3] "Broadly speaking, [28 U.S.C. § 1226] governs the detention of immigrants [already present in the United States] who are not immediately deportable."  *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018).  Section 1226(a) provides that the Attorney General "may continue to detain [an] arrested alien" but also "may release" the noncitizen on bond or parole.  *Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018).  "Federal regulations provide that [noncitizens] detained under [section] 1226(a) receive bond hearings at the outset of detention."  *Id.* at 847 (citing 8 C.F.R. §§ 236.1(d)(1),

of removable noncitizens (that is, those already present in the United States), it now

argues that Rasel's detention is valid under 8 U.S.C. § 1225(b),[4] which governs the

detention of unadmitted noncitizens (that is, "applicants for admission"). *Compare*

*Rasel I*, Docket Item 8-3 at 11, Docket Item 10 at 3, and Docket Item 11 at 2, 6 & n.4,

*with* Docket Item 8-1 at 9.  Rasel opposes this shift in position, arguing that, as a matter

of both administrative law and principles of equity, the respondents are bound by their

prior representations.  *See* Docket Item 9 at 10-16.

    This Court need not decide this issue, as Rasel challenges the constitutionality of

his detention—not, for example, the proper application of a certain statutory or

regulatory scheme.  *See* Docket Item 1.  And "due process protections . . . are 'not to be

avoided by the simple label [the government] chooses to fasten upon its conduct or its

statute.'"  *Sessions v. Dimaya*, 138 S. Ct. 1204, 1229 (2018) (Gorsuch, *J.*, concurring)

(quoting *Giaccio v. Pennsylvania*, 382 U.S. 399, 402 (1966)).  Indeed, Rasel concedes

as much: "[W]hether the Court agrees with Mr. Rasel or [the r]espondents about the

statutory authority for his detention, all that is really required is to determine whether

procedures in which Mr. Rasel is forced to justify his own release can satisfy due

process."  *See* Docket Item 9 at 18; *see also id.* at 19 ("[T]o a great extent, the statutory

---

1236.1(d)(1)).  Otherwise, section 1226(a) detainees are not statutorily entitled to
periodic bond hearings.  *Id.*

    [4] "[A noncitizen] who 'arrives in the United States,' or 'is present' in this country
but 'has not been admitted,' is treated as 'an applicant for admission.'"  *Jennings v.
Rodriguez*, 138 S. Ct. 830, 836 (2018) (quoting § 1225(a)(1)).  Section 1225(b)(2)
"mandate[s] detention of applicants for admission . . . for 'removal proceedings.'"  *Id.* at
842 (quoting § 1225(b)(2)) (internal alterations omitted); *see also id.* at 844 ("With a few
exceptions not relevant here, the Attorney General may 'for urgent humanitarian
reasons or significant public benefit' temporarily parole [noncitizens] detained
under [section § 1225(b)]." (quoting 8 U.S.C. § 1182(d)(5)(A)).

text is irrelevant.  Rather, this Court must be concerned with what the Constitution—not

the [Immigration and Nationality Act]—says about prolonged detention.").  Because

there is no dispute that Rasel is held under one of the two pre-removal order statutes,[5]

this Court will not decide whether he, as a statutory matter, is an unadmitted or

removable noncitizen.  It turns instead to the merits of Rasel's constitutional claims.

## II.    DUE PROCESS

Rasel argues that his continued detention violates the Due Process Clause.  *See*

Docket Item 1 at 13-14.  The Fifth Amendment's Due Process Clause prohibits the

federal government from depriving any "person . . . of . . . liberty without due process of

law."  U.S. Const. amend. V.  The Supreme Court "has held that the Due Process

Clause protects individuals against two types of government action."  *United States v.*

*Salerno*, 481 U.S. 739, 746 (1987).  "So called 'substantive due process' prevents the

---

[5] In deciding prior habeas petitions brought by immigration detainees, this Court has sometimes begun by determining whether the petitioner was held in pre- or post-final-removal-order detention.  *See, e.g.*, *Hemans v. Searls*, 2019 WL 955353, at *3 (W.D.N.Y. Feb. 27, 2019); *Sankara v. Whitaker*, 2019 WL 266462, at *4-*5 (W.D.N.Y. Jan. 18, 2019).  That distinction was significant because the Supreme Court, using the doctrine of of constitutional avoidance, has interpreted the post-final-removal-order detention statute, 8 U.S.C. § 1231(a), as including an implied limit on the length of detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 697 (2001).  Thus, in the case of post-final-removal-order detention, the statutory and constitutional issues are inextricably intertwined.  But the Supreme Court expressly has declined to read the same sort of limit into the two pre-final-removal-order statutes, sections 1225 and 1226, because, unlike section 1231(a) which could provide for indefinite detention if the individual cannot be removed, sections 1225 and 1226 "provide for detention for a specific period of time"—namely, the completion of removal proceedings.  *See Jennings*, 138 S. Ct. at 844, 846, 850.  And so determination of the statutory basis of Rasel's detention—whether section 1225 or 1226—is not similarly intertwined with the constitutional challenges he brings in the instant petition.  To the extent Rasel's petition might be read to claim that his detention violates section 1231(a) as interpreted by the Supreme Court in *Zadvydas*, that claim is denied because his removal order is not final due to his pending Second Circuit appeal.

government from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in the concept of ordered liberty." *Id.* (citations omitted). "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Id.* "This requirement has traditionally been referred to as 'procedural' due process." *Id.*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and narrow nonpunitive circumstances, . . . where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (emphasis in original) (citations omitted). Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty. That promise stands as one of the Constitution's most vital protections against arbitrary government." *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019).

"[Noncitizens,] even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyler v. Doe*, 457 U.S. 202, 210 (1982); *see also Mathews v. Diaz*, 426 U.S. 67, 69 (1976) ("Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to [Fifth and Fourteenth Amendment] protection[s]."). At the same time, Congress has "broad power over naturalization and immigration,

[permitting it to] make[ ] rules that would be unacceptable if applied to citizens."
*Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews*, 426 U.S. at 79-80); *see also Mathews,* 426 U.S. at 81 ("For reasons long recognized as valid, the responsibility for regulating the relationship between the United States and our [noncitizen] visitors has been committed to the political branches of the Federal Government.").

### A.    Substantive Due Process

Rasel argues that his detention violates his right to substantive due process. Docket Item 1 at 13.  He has been detained by DHS since June 18, 2018—more than twenty-two months.  Docket Item 8-2 at 2.  But this Court cannot say that detention that long violates due process.  *See Sanusi v. I.N.S.*, 100 F. App'x 49, 51 (2d Cir. 2004) (summary order) (determining that six-year detention did not violate due process). Indeed, detention may serve the government's compelling interest in "preser[ving] [its] ability to later carry out its broader responsibilities over immigration matters."  *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991).  Although there comes a time when the length of a noncitizen's detention pending removal violates due process regardless of the procedural protections afforded, *see Salerno*, 481 U.S. at 747 n.4, that time has not yet come here.

### B.    Procedural Due Process

Rasel also argues that his ongoing detention violates his right to procedural due process.  *See* Docket Item 1 at 13.  The Due Process Clause is not offended by the mandatory detention of noncitizens for the "*brief period necessary* for their removal proceedings," *Demore*, 538 U.S. at 513 (emphasis added), but may be violated by detention beyond that "brief" period, depending on the balance of the individual's and

the government's interests, *see, e.g.*, *id.* at 532 (Kennedy, *J.*, concurring) ("[A] lawful permanent resident . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention bec[omes] unreasonable or unjustified."); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances.").

For that reason, this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry." *Hemans v. Searls*, 2019 WL 955353, at *5 (W.D.N.Y. Feb. 27, 2019). "At the first step, the Court considers whether the [noncitizen]'s detention has been unreasonably prolonged." *Id.* "If it has not, then there is no procedural due process violation." *Id.* "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process.'" *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). If the government has not provided the procedural safeguards required by the Due Process Clause to a noncitizen subject to unreasonably prolonged detention, "then his continued detention violates procedural due process." *Id.*

### 1.   Rasel's Detention

"[W]hen weighing the lawfulness of continued detention of a[ noncitizen] under the Due Process Clause," several factors determine whether the detention is unreasonably prolonged. *Jamal A. v. Whitaker*, 2019 WL 549722, at *3 (D. Minn. Jan. 22, 2019). This Court, for example, has considered "(1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal." *Hemans*, 2019 WL 955353, at *6.

First, and most important, courts consider the length of detention.  Rasel has been in DHS custody since June 18, 2018—more than twenty-two months.  *See* Docket Item 8-3 at 2-3.  "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing."  *Muse v. Sessions*, 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018) (and cases cited therein).  In fact, courts have found detention even shorter than a year to be unreasonably prolonged as part of a procedural due process analysis.[6]

In *Demore*, in upholding the constitutionality of mandatory detention under section 1226(c), the Supreme Court relied on the fact that there was a "very limited time of . . . detention at stake," noting that "in the majority of cases[, section 1226(c) detention] lasts less than the 90 days . . . considered presumptively valid in *Zadvydas*."  *Demore*, 538 U.S. at 529 & n.12; *see also id.* ("[I]n 85% of the cases in which aliens are detained pursuant to [section] 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days.  In the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." (citations omitted)).

---

[6] *See, e.g.*, *Vargas v. Beth*, 2019 WL 1320330, at *8 (E.D. Wis. Mar. 22, 2019) ("approximately nine and a half months"); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) ("over seven months" and "over nine months" by the next removal-related hearing); *Hernandez v. Decker*, 2018 WL 3579108, at *1, *12 (S.D.N.Y. July 25, 2018) (nine months); *Sajous v. Decker*, 2018 WL 2357266, at *1, *12 (S.D.N.Y. May 23, 2018) (over eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 720 (D. Md. 2016) (exceeding ten months); *see also Sopo v. U.S. Attorney General*, 825 F.3d 1199, 1218 (11th Cir. 2016) ("[A] criminal alien's detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case.").

Rasel's twenty-two-month detention far exceeds the four-month average cited in *Demore*. The length of Rasel's detention therefore supports his argument that his detention has been unreasonably prolonged.

Second, courts consider the conditions of detention. Whether "the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention" factors into the reasonableness of Rasel's detention. *Sajous v. Decker*, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018). "The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Muse*, 2018 WL 4466052, at *5. Neither party has supplied the Court with details about the conditions that Rasel faces at the Buffalo Federal Detention Facility. So this Court cannot address that factor.

Third, courts consider whether the detainee has prolonged his own detention. The Second Circuit has found that this factor weighs against finding detention unreasonable when a noncitizen has "substantially prolonged his stay by abusing the processes provided to him" but not when "an immigrant . . . simply [has] made use of the statutorily permitted appeals process." *Hechavarria*, 891 F.3d at 56 n.6 (first quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)). As the Sixth Circuit has noted, "appeals and petitions for relief are to be expected as a natural part of the process. [A noncitizen] who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him." *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) (cited in *Hechavarria*, 891 F.3d at 56 n.6). Indeed,

> although [a noncitizen] may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The

12

mere fact that [a noncitizen] has sought relief from deportation does not authorize the [government] to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonableness.

*Id.*

Here, DHS took Rasel into custody in June 2018. Docket Item 8-3 at 2-3. Rasel sought one adjournment to file applications for relief from removal, after which the IJ ordered him removed in November 2018. *See* Docket Item 8-3 at 17. Since that time, he has appealed the IJ's decision to the BIA and then to the Second Circuit, where his appeal remains pending. Although Rasel has caused some of the delay in his removal, he certainly has not "abus[ed] the processes provided to him." *See Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken*, 556 U.S. at 436). In fact, he has done no more than challenge his removal and "ma[k]e use of the statutorily permitted appeals process." *Id.* at 56 n.6. Therefore, the third factor weighs in neither side's favor.

Finally, courts consider the likelihood that the removal proceedings will result in a final order of removal. This Court declines to weigh the merits of Rasel's claims pending before the Second Circuit.

After weighing all these factors, this Court finds that Rasel's detention has been unreasonably prolonged. Therefore, this Court turns to the second step of the two-part inquiry to determine what remedy his unreasonably-prolonged detention demands.

## 2.    The Process Due to Rasel

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.* at 335,

13

namely: "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake," *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017).  Here, that analysis leads to the conclusion that Rasel's continued detention without an opportunity for at least an annual review of his custody status, as well as an opportunity to contest an adverse determination through a personal interview, fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause," *see Schall v. Martin*, 467 U.S. 253, 263 (1984).

When analyzing the process due to noncitizens, the nature of the protection "may vary depending upon [a noncitizen's] status and circumstance." *Zadvydas*, 533 U.S. at 694.  For example, there is a relevant "distinction between [a noncitizen] who has effected an entry into the United States and one who has never entered." *Id.* at 693. After all, if release from physical confinement means that noncitizens who have never "entered" our country "be released into American society," *Chi Thon Ngo*, 192 F.3d at 394 (quoting *Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1448 (9th Cir. 1995)), release may "ultimately result in our losing control over our borders," *id.* (quoting *Jean v. Nelson*, 727 F.2d 957, 975 (11th Cir. 1984)).

For that reason, with respect to noncitizens apprehended "at a port of entry, . . . Congress has plenary power, and . . . the process prescribed by Congress constitutes due process." *United States v. Raya-Vaca*, 771 F.3d 1195, 1203 n.5 (9th Cir. 2014) (citing *Kleindienst v. Mandel,* 408 U.S. 753, 766 (1972); *United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 544 (1950)).  With respect to noncitizens apprehended within the United States, however, Congress has "broad"—but not absolute—"power,"

14

*Demore*, 538 U.S. at 521 (quoting *Mathews*, 426 U.S. at 79-80), and those noncitizens "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law," *Shaughnessey v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1954); *see also Zadvydas*, 533 U.S. at 721 (Kennedy, *J.*, dissenting) ("Removable and [arriving noncitizens] are situated differently before an order of removal is entered; the removable [noncitizen], by virtue of his continued presence here, possesses an interest in remaining, while the [arriving noncitizen] seeks only the privilege of entry."); *United States ex. rel. Kordic v. Esperdy*, 386 F.2d 232, 235 (2d Cir. 1967) (explaining that noncitizens detained within the United States are entitled to "additional rights and privileges not extended to those . . . who are 'merely on the threshold of initial entry'" (quoting *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958))).

But "entry" is a far more flexible, fact-intensive determination than advanced by the respondents.  For example, a "'parolee,' even though physically in the country, is not regarded as having 'entered' and thus has not acquired the full protection of the Constitution.  If he is required to leave the United States, he is being excluded, not expelled."  *Esperdy*, 386 F.2d at 235; *see also Padilla v. Immigration & Customs Enf't*, 953 F.3d 1134, 1146 (9th Cir. 2020) (describing "the peculiar constitutional status of noncitizens apprehended at a port-of-entry, but permitted to temporarily enter the United States under specific conditions").  Conversely, a noncitizen "who has run some fifty yards into the United States has entered the country," *Raya-Vaca*, 771 F.3d at 1203 (citations omitted), and is entitled to certain protections under the Due Process Clause. *See also Padilla*, 953 F.3d at 1146 ("[O]nce a person is standing on U.S. soil— regardless of the legality of his or her entry—he or she is entitled to due process.").

Here, Rasel was in the United States when the border patrol found him.  His presence "on U.S. soil" therefore entitles him to greater procedural protections than those available to arriving noncitizens.  *See id.*  Nevertheless, the degree of additional protections due to Rasel is not substantial.  Rasel is someone "who has been here for too brief a period to have become, in any real sense, a part of our population, before his right to remain [was] disputed."  *Yamataya v. Fisher*, 189 U.S. 86, 100 (1903).  And Congress's power with respect to someone apprehended within a day of entry and close to the border falls decidedly closer to "plenary" than "broad."

This Court's position therefore remains unchanged that, as a noncitizen apprehended shortly after his entry, Rasel is entitled only to a "searching and periodic 'rigorous review of [his] eligibility for release' based on individualized findings."  *Rasel I*, Docket Item 13 at 12-13 (quoting *Clerveaux*, 397 F. Supp. 3d. at 321).  But this Court is not persuaded that Rasel has been provided such process.

As this Court explained in *Clerveaux*, the government might provide a noncitizen "a periodic individualized 'rigorous review of [his] eligibility' for release" by using "procedures at least as favorable to [noncitizens] as those examined in *Chi Thon Ngo* or *Guzman* [*v. Tippy*, 130 F.3d 64 (2d Cir. 1997)]."  397 F. Supp. 3d at 320, 322 (quoting *Chi Thon Ngo*, 192 F.3d at 399).  In *Chi Thon Ngo*, the arriving noncitizen was provided:

> (1) written notice . . . thirty days prior to the custody review advising that he may present information supporting [his] release; (2) the right to representation by counsel or other individuals; (3) the opportunity for an annual personal interview; (4) written explanations for a custody decision; (5) the opportunity for review by [Immigration and Nationality Service] headquarters; (6) reviews every six months; (7) a refusal to presume continued detention based on criminal history; and other provisions.

*Id.* at 320 (quoting *Chi Thon Ngo*, 192 F.3d at 399).  And in *Guzman*, the arriving noncitizen was provided "[an] annual evaluation . . . to reassess [his] eligibility for parole."  *Id.* at

*13 (quoting *Guzman*, 130 F.3d at 66).  If during that review the "[Immigration and

Nationality Service] review panel [found] that [the noncitizen was] (1) currently

nonviolent; (2) likely to remain nonviolent; (3) not likely to be a threat to the community;

and (4) not likely to violate the conditions of parole, he [would] be recommended for

release."  *Id.* (quoting *Guzman*, 130 F.3d at 66 (citing *See* 8 C.F.R. § 212.12(d)(2))).  If

not "granted parole after a review of the record," the noncitizen would be "entitled to a

personal interview with the review panel."  *Id.* (quoting *Guzman*, 130 F.3d at 66 (citing 8

C.F.R. § 212.12(d)(4)(ii))).

Here, an IJ held an individualized bond hearing in October 2018 and determined

that Rasel would remain detained because he had not presented clear and convincing

evidence that he was not a flight risk.  *See* Docket Item 8-3 at 22-23.  And in July 2019,

a DHS Field Office Director completed a review of Rasel's custody under 8 C.F.R.

§ 241.4(h).  *Id.* at 44-46.  Rasel was provided at least 30 days' notice of the review;

offered an opportunity to submit written evidence, on his own or through counsel; and

given a written explanation for DHS's decision to continue his detention:

> [Rasel has] limited education, familial support, and employment prospects.
> [Rasel] entered the United States without proper legal documents or a valid
> entry document and admitted to illegally crossing the international boundary
> without being inspected by an Immigration Officer.  Given these factors,
> [ICE] considers that [Rasel] may pose a risk of flight.

*Id.* at 46.  DHS also has twice reviewed and denied, via written letters, his applications

for humanitarian parole in February and November 2019.  *See id.* at 23, 59.

Although these procedures provide Rasel some of the process due to him, [7] they

fail in two critical respects.  First, there is no evidence that Rasel, like the noncitizens in

---

[7] Even if Rasel is being held under section 1225(b) and his detention therefore is
covered by the nationwide injunction entered in *Padilla v. Immigration & Customs Enf't*,

*Chi Thon Ngo* and *Guzman*, has been provided an opportunity for a personal interview to contest his adverse custody determination.  *See also* 8 C.F.R. § 241.4(h)(1) ("[T]he [Field Office Director] *may in his or her discretion* schedule a personal or telephonic interview with the alien as part of this custody determination." (emphasis added)).  And second, it appears that DHS will provide Rasel with less-than-annual reviews of his custody status.  In the July 2019 decision to continue Rasel's detention, the DHS Field Office Director noted that "[i]f [Rasel has] not been removed from the United States by July 28, 2020, ICE will review the custody decision [i]n [his] case in accordance with current ICE policy.  [His] case will be reviewed on an annual basis while a judicial stay is in place."  Docket Item 8-3 at 46.  Yet Rasel's next opportunity for "annual" review is October 2020—more than fifteen months after his previous review.  *See* Docket Item 8-2 at 9.

The respondents therefore have failed to provide Rasel with all the process due to him in light of his unreasonably prolonged detention.  As such, his continued detention violates the Due Process Clause.  Rasel must be released unless, **no later than July 29, 2020**, he receives both an individualized review of his custody status under 8 C.F.R. § 241.4 and, if needed, an opportunity to challenge an adverse custody determination through a personal interview with DHS officials, as provided in 8 C.F.R. § 241.4(i)(3).

---

387 F. Supp. 3d 1219 (W.D. Wash. 2019), DHS has provided Rasel with all the process due to him under that portion of the injunction recently upheld by the Ninth Circuit Court of Appeals.  *See Padilla*, 953 F.3d at 1142, 1152 (upholding portion of the injunction "requiring that [section 1225(b)(1)(B)(ii)] detainees receive bond hearings" but remanding for "further factual development and consideration of the procedures that must be followed with respect to the required bond hearings").

### III.    EXCESSIVE BAIL CLAUSE

Rasel argues that the "government's categorical denial of bail to certain non-citizens violates the right to bail encompassed by the Eighth Amendment."  Docket Item 1 at 14.  For the following reasons, Rasel lacks standing to adjudicate this claim.

"An important component of the Article III jurisdictional limit of federal courts to deciding 'cases' or 'controversies' is standing."  *All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006).  To establish standing, the party must allege (1) an "injury in fact," (2) "a causal connection between the injury and the conduct complained of"; and (3) a likelihood "that the injury will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 503 U.S. 555, 560 (1992) (internal citations omitted).

In this case, Rasel's injury—the denial of his liberty—does not bear "a causal connection" to "the conduct complained of."  *Id.*  Rasel does not deny that he had a bond hearing where an IJ denied bail based on individualized findings.  Therefore, regardless of whether he is correct in his claim that the "government's categorical denial of bail to certain non-citizens violates the right to bail encompassed by the Eighth Amendment," Docket Item 1 at 14, the government did not categorically deny *him* bail. It denied him bail based on individualized findings at a bond hearing.  Rasel's injury thus lacks a causal connection to the conduct complained of, and he lacks standing to bring this claim.

## **CONCLUSION**

For the reasons stated above, Rasel's petition, Docket Item 1, is GRANTED IN PART and DENIED IN PART.  **No later than July 29, 2020**, the respondents must release Rasel from detention unless he has received both an individualized review of his custody status under 8 C.F.R. § 241.4 and, if needed, an opportunity to challenge an adverse custody determination through a personal interview with DHS officials, as provided in 8 C.F.R. § 241.4(i)(3).

## **ORDER**

In light of the above, IT IS HEREBY

ORDERED that **no later than July 29, 2020**, the government must release

Rasel from detention unless he has received both an individualized review of his

custody status under 8 C.F.R. § 241.4 and, if needed, an opportunity to challenge an

adverse custody determination through a personal interview with DHS officials, as

provided in 8 C.F.R. § 241.4(i)(3); and it is further

ORDERED that **no later than August 29, 2020**, the respondents shall file and

serve an affidavit certifying their compliance with this order.  That affidavit should

include a written copy of DHS's decision(s).


SO ORDERED.

Dated:          April 17, 2020
                    Buffalo, New York


                                         */s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE